IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAFETY-KLEEN SYSTEMS, INC.,<br><br>Defendant. | Case No. 25-cv-167 |

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States, and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges the following:

**NATURE OF THE ACTION**

1. Safety-Kleen Systems, Inc. operates the world's largest used oil re-refinery in East Chicago, Indiana. The operations at Safety-Kleen's facility generate large amounts of contaminated wastewater that Safety-Kleen is required to pretreat in its own wastewater treatment plant before the wastewater is discharged to the City of East Chicago's municipal sewer system.

2. For years preceding the filing of this Complaint, Safety-Kleen has violated requirements of the federal Clean Water Act by its unauthorized discharge of excessive levels of pollutants in the contaminated wastewater that its East Chicago facility discharges to the City's sewer system. The City's sewer system conveys Safety-Kleen's contaminated wastewater to the City's municipal wastewater treatment plant, where it receives partial treatment before being discharged to the Grand Calumet River.

3. This is an action for civil penalties and injunctive relief brought pursuant to Sections 309(b) and (d) of the federal Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d), against Safety-Kleen Systems, Inc. ("Safety-Kleen" or "Defendant"), for the Defendant's violations of the CWA and its implementing regulations and requirements of a series of Industrial Wastewater Discharge Permits issued to Safety-Kleen by the East Chicago Sanitary District ("ECSD").

## JURISDICTION, VENUE, AND NOTICE

4. This Court has jurisdiction over the subject matter of this action pursuant to Sections 309(b) and 505 of the CWA, 33 U.S.C. §§ 1319(b) and 1365, and 28 U.S.C. §§ 1331, 1345, and 1355.

5. This Court has personal jurisdiction over Safety-Kleen pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

6. Venue is proper in the Northern District of Indiana pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because Safety-Kleen is located in and transacts business in this District and the causes of action alleged in this Complaint arose in this District.

7. The United States has given the State of Indiana notice of the commencement of this action in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## THE PARTIES

8. Plaintiff the United States of America is acting at the request and on behalf of EPA.

9. The United States Department of Justice has authority to bring this action on behalf of EPA, pursuant to 28 U.S.C. §§ 516 and 519.

10. Defendant Safety-Kleen is a Wisconsin corporation that owns and operates an industrial facility located at 601 Riley Road, East Chicago, Indiana (the "Safety-Kleen Facility" or the "Facility").

11. Safety-Kleen is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

12. During the period of time relevant to this action, the Defendant was the "owner" of the Safety-Kleen Facility within the meaning of CWA Section 307(d), 33 U.S.C. § 1317(d).

13. During the period of time relevant to this action, the Defendant was the "operator" of the Safety-Kleen Facility within the meaning of CWA Section 307(d), 33 U.S.C. § 1317(d).

## **LEGAL BACKGROUND**

The Clean Water Act

14. The purpose of the CWA is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes a national goal of eliminating the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1).

15. Safety-Kleen has caused the "discharge of pollutants" from "point sources" into "navigable waters" of the United States – through ECSD's Publicly Owned Treatment Works ("POTW") – within the meaning of CWA Section 502(6), (7), (12), (14), and (16), 33 U.S.C. § 1362(6), (7), (12), (14), and (16).

16. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person into navigable waters of the United States, except in compliance with the CWA. The discharge of pollutants may be authorized, *inter alia*, by CWA Section 307, 33 U.S.C. § 1317, which permits indirect discharge by an Industrial User through a POTW with a National

Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342, but only when the Industrial User complies with Federal Pretreatment Standards and Requirements, codified at 40 C.F.R. chapter I, subchapter N, (including "local limits" imposed by the POTW that are deemed to be federally enforceable pretreatment standards under 40 C.F.R. §§ 403.5(c)(4) and 403.5(d)).

17. The State of Indiana is authorized by EPA, pursuant to CWA Section 402(b), 33 U.S.C. § 1342(b), to administer an NPDES permit program for discharges into navigable waters within its jurisdiction. *See* 40 Fed. Reg. 4,033 (Jan. 27, 1975).

18. The Indiana Department of Environmental Management ("IDEM") has issued ECSD an NPDES permit, designated as Permit No. IN0022829, under the authority conferred by CWA Section 402(b).

19. ECSD's NPDES permit authorizes ECSD's POTW to discharge its treated wastewater to the Grand Calumet River.

20. The Grand Calumet River is a "navigable water" and a "water of the United States" within the meaning of the CWA. 33 U.S.C. § 1362(7).

Pretreatment Requirements and Standards Applicable to POTWs and Industrial Users

21. As required by CWA Section 307(b), 33 U.S.C. § 1317(b), EPA has promulgated "General Pretreatment Regulations for Existing and New Sources of Pollution" (the "Pretreatment Regulations") set forth at 40 C.F.R. Part 403. The Pretreatment Regulations include "National Pretreatment Standards" set forth at 40 C.F.R. § 403.5, including "general prohibitions" (403.5(a)), and "specific prohibitions" (403.5(b)). Those National Pretreatment Standards prohibit the introduction of pollutants into a POTW that could "pass through" a POTW without treatment or cause "interference" with a POTW's operation.

22. Under 40 C.F.R. § 403.3(p): "The term *Pass Through* means a Discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation)."

23. Under 40 C.F.R. § 403.3(k): "The term *Interference* means a Discharge which, alone or in conjunction with a discharge or discharges from other sources, both:

(1) Inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use or disposal; and

(2) Therefore is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation) or of the prevention of sewage sludge use or disposal in compliance with the following statutory provisions and regulations or permits issued thereunder (or more stringent State or local regulations): Section 405 of the Clean Water Act, the Solid Waste Disposal Act (SWDA) (including title II, more commonly referred to as the Resource Conservation and Recovery Act (RCRA), and including State regulations contained in any State sludge management plan prepared pursuant to subtitle D of the SWDA), the Clean Air Act, the Toxic Substances Control Act, and the Marine Protection, Research and Sanctuaries Act."

24. The terms "slug discharge" and "slug loading" mean "any Discharge of a non-routine, episodic nature, including but not limited to an accidental spill or a non-customary batch Discharge, which has a reasonable potential to cause Interference or Pass Through, or in any other way violate the POTW's regulations, local limits or Permit conditions." 40 C.F.R. § 403.8(f)(2)(vi).

25. Under 40 C.F.R. § 403.3(c): "The term *Approval Authority* means the Director in an NPDES State with an approved State pretreatment program and the appropriate Regional Administrator in a non-NPDES State or NPDES State without an approved State pretreatment program."

26. In the State of Indiana, the Regional Administrator for EPA Region 5 acts as the Approval Authority because Indiana is a NPDES State without an approved State pretreatment program.

27. The Pretreatment Regulations at 40 C.F.R. § 403.8 require affected POTWs to submit a POTW pretreatment program for approval by the Approval Authority. The Pretreatment Regulations, at 40 C.F.R. § 403.5(c), then require a POTW with an approved pretreatment program to develop and enforce specific "local limits" which implement the National Pretreatment Standards contained in 40 C.F.R. § 403.5(a) (general prohibition on pass through and interference) and 403.5(b) (specific prohibitions).

28. The local limits that a POTW develops for its pretreatment program may include specific prohibitions or limits on pollutants or pollutant parameters as well as required best management practices. 40 C.F.R. §§ 403.5(c) and 403.5(d).

29. As provided by 40 C.F.R. §§ 403.5(c)(4) and 403.5(d), the local limits developed by the POTW are deemed to be pretreatment standards for the purposes of CWA Section 307(d), 33 U.S.C. § 1317(d), and are therefore federally enforceable against "Industrial Users" of the POTW.

30. The Pretreatment Regulations, at 40 C.F.R. § 403.3, define an "Industrial User" as "a source of Indirect Discharge," and in turn define "Indirect Discharge" as "the introduction of pollutants into a POTW from any non-domestic source regulated under Section 307(b), (c), or (d)

of the Act." The Pretreatment Regulations define a "Significant Industrial User" as encompassing, *inter alia*, "industrial users subject to Categorical Pretreatment Standards under 40 CFR § 403.6 and 40 CFR chapter I, subchapter N."

31. The Pretreatment Regulations, at 40 C.F.R. § 403.8(f)(1), require that POTWs take steps to ensure compliance with pretreatment requirements imposed under CWA Section 307(d), such as: (i) mandating compliance with applicable pretreatment standards and requirements by Industrial Users (403.8(f)(1)(ii)); and (ii) controlling through permit, order, or similar means, the contribution to the POTW by each Industrial User to ensure compliance with applicable Pretreatment Standards and Requirements (403.8(f)(1)(iii)).

32. The Pretreatment Regulations, at 40 C.F.R. § 403.12, also impose certain obligations directly upon Industrial Users to ensure compliance with the pretreatment requirements imposed under CWA Section 307(d), such as requiring compliance with Categorical Pretreatment Standards applicable to certain industry sectors (40 C.F.R. chapter I, subchapter N) and requiring all wastewater sample analyses to be performed in accordance with procedures contained in 40 C.F.R. Part 136 (403.12(g)(5)).

33. The ECSD POTW is subject to the Pretreatment Regulations, including the National Pretreatment Standards. EPA approved ECSD's pretreatment program on or about February 14, 1986.

34. During the period of time relevant to this action, the Safety-Kleen Facility has been an "Industrial User" of the ECSD POTW, and the Safety-Kleen Facility has been subject to the Pretreatment Regulations, including the National Pretreatment Standards. The Safety-Kleen Facility has been classified as a "Significant Industrial User" of the ECSD POTW because the

Facility is an Industrial User subject to applicable requirements of the Categorical Pretreatment Standard for the Centralized Waste Treatment category, codified at 40 C.F.R. Part 437.

City of East Chicago Code Chapter 51

35. In accordance with the requirements imposed by the Pretreatment Regulations, including 40 C.F.R. § 403.8(f), the City of East Chicago's Common Council has enacted a series of municipal Ordinances – codified at Chapter 51 of the City of East Chicago Code of Ordinances ("Code Chapter 51") – establishing Wastewater Discharge Regulations and a Pretreatment Program administered by ECSD. In permits and other documents, requirements codified in Sections of Code Chapter 51 are sometimes cited by reference to corresponding Articles of the original Ordinance.

36. The current version of Code Chapter 51 was enacted on November 13, 2018, through the Common Council's passage and adoption of Ordinance No. 18-0017 ("2018 Code Chapter 51").

37. Ordinance No. 18-0017 amended and replaced a prior version of Code Chapter 51 that was originally enacted in 1990 by Ordinance No 3512 and amended in 1993 by Ordinance 93-0017, in 1996 by Ordinance No. 06-007, and in 2007 by Ordinance No. 07-007 ("2007 Code Chapter 51").

38. 2018 Code Chapter 51 provides, *inter alia*, that: (i) any Industrial User must obtain a Wastewater Discharge Permit based upon a permit application submitted to the City (2018 Code Sections 51.071-51.092); (ii) an Industrial User must provide necessary wastewater pretreatment as required to comply with the Wastewater Discharge Regulations and all applicable Pretreatment Standards (2018 Code Section 51.070); (iii) an Industrial User must take various steps to avoid and address discharges that could "pass through" the ECSD POTW

without adequate treatment or cause "interference" with the ECSD POTW's operation, including meeting Specific Pollutant Limitations established to guard against pass through and interference (2018 Code Sections 51.020, 51.037, 51.109, and 51.113); and (iv) an Industrial User must comply with other mandates imposed as local limits, including specific prohibitions and best management practices.

39. 2007 Code Chapter 51 imposed comparable requirements. 2007 Code Chapter 51 provided, *inter alia*, that: (i) any Industrial User must obtain a Wastewater Discharge Permit based upon a permit application submitted to the City (2007 Code Sections 51.090-51.095); (ii) an Industrial User must provide necessary wastewater pretreatment as required to comply with the Wastewater Discharge Regulations and all applicable Pretreatment Standards (2007 Code Section 51.078); (iii) an Industrial User must take various steps to avoid and address discharges that that could pass through the ECSD POTW without adequate treatment or cause interference with the ECSD POTW's operation, including meeting Specific Pollutant Limitations established to guard against pass through and interference (2007 Code Sections 51.030, 51.031, and 51.047); and (iv) an Industrial User must comply with other mandates imposed as local limits, including specific prohibitions and best management practices.

The Industrial Wastewater Discharge Permits for the Facility

40. In accordance with the requirements imposed by the Pretreatment Regulations, including 40 C.F.R. § 403.8(f), ECSD issues Industrial Wastewater Discharge Permits to Industrial Users to control the contribution of pollutants to the ECSD POTW by each Industrial User.

41. Since at least 2013, ECSD has issued a series of Industrial Wastewater Discharge Permits for Outfall No. 901 at the Safety-Kleen Facility (the "Facility Permits").

42. Safety-Kleen operated under a Facility Permit for Outfall No. 901 that was effective from August 22, 2013, until at least August 21, 2018 (the "2013 Permit").

43. Safety-Kleen operated under another Facility Permit for Outfall No. 901 that was effective from November 15, 2018, until at least July 6, 2020 (the "2018 Permit").

44. Safety-Kleen operated under another Facility Permit for Outfall No. 901 that was effective from July 7, 2020, until at least August 21, 2023 (the "2020 Permit").

45. Safety-Kleen currently operates under another Facility Permit for Outfall No. 901 that took effect on August 21, 2023 (the "2023 Permit").

46. In conformance with requirements imposed by Code Chapter 51, the Facility Permits required, *inter alia*, that Safety-Kleen: (i) comply with Code Chapter 51's Specific Pollutant Limitations established to guard against pass through and interference; (ii) comply with applicable requirements of the Categorical Pretreatment Standard for the Centralized Waste Treatment Point Source Category, codified at 40 C.F.R. Part 437; and (iii) comply with other mandates imposed as local limits, including specific prohibitions and best management practices.

Specific Pollutant Limitations

47. 2007 Code Section 51.047 and the 2013 Permit prohibited Safety-Kleen from discharging wastewater containing certain pollutants in excess of specified concentrations, including:

| **Parameter** | **Daily Maximum Limit (in milligrams per liter)** |
|---|---|
| Cyanide, free | 0.003 |
| Mercury | 0.0002 |
| Phenols | 0.96 |

48. 2018 Code Section 51.037, the 2018 Permit, the 2020 Permit, and the 2023 Permit prohibited Safety-Kleen from discharging wastewater containing certain pollutants in excess of specified concentrations, including:

| **Parameter** | **Daily Maximum Limit (in milligrams per liter)** |
|---|---|
| Ammonia | 134 |
| Bis (2-ethylhexyl) phthalate | 1.03 |
| Copper, total | 0.88 |
| Cyanide, available | 0.019 |
| Fluoride | 30 |
| Lead, total | 2.28 |
| Mercury | 0.0002 |
| Phenols | 0.96 |
| Total oil and grease | 117 |
| Zinc, total | 5.5 |

49. 2018 Code Section 51.020(B)(22), the 2018 Permit, the 2020 Permit, and the 2023 Permit also prohibited Safety-Kleen from discharging wastewater with a pH outside the range of 5-10 standard units.

Categorical Limitations

50. Beyond the Specific Pollutant Limitations identified above, 40 C.F.R. § 437.25, the 2018 Permit, the 2020 Permit, and the 2023 Permit imposed added – and in some cases more stringent – Categorical Limitations that prohibited Safety-Kleen from discharging wastewater containing certain pollutants in excess of specified concentrations, including:

| **Parameter** | **Daily Maximum Limit (in milligrams per liter)** |
|---|---|
| Bis (2-ethylhexyl) phthalate | 0.267 |
| Copper | 0.405 |
| Lead | 0.222 |
| n-Octadecane | 1.22 |

51. In addition to imposing the daily maximum limits listed in the table in the preceding paragraph, 40 C.F.R. § 437.25, the 2018 Permit, the 2020 Permit, and the 2023 Permit imposed Categorical Limitations that prohibited Safety-Kleen from discharging wastewater containing certain pollutants in excess of specified maximum monthly average concentrations, including:

| **Parameter** | **Maximum Monthly Average Limit (in milligrams per liter)** |
|---|---|
| Bis (2-ethylhexyl) phthalate | 0.158 |
| Copper | 0.301 |
| Lead | 0.172 |
| n-Octadecane | 0.925 |

Other General Requirements and Prohibitions

52. The Clean Water Act and its implementing regulations, Code Chapter 51, and the Facility Permits impose other general requirements and prohibitions designed to avoid and address discharges that could pass through the ECSD POTW without adequate treatment or cause interference with the ECSD POTW's operation.

53. 40 C.F.R. § 403.5(b), 2018 Code Section 51.020(B), the 2018 Permit, the 2020 Permit, and the 2023 Permit prohibited Safety-Kleen from discharging any slug load, which means any pollutant, including oxygen demanding pollutants, released in a discharge at a flow rate and/or pollutant concentration which will cause interference to the POTW.

54. 40 C.F.R. § 403.5(b), 2018 Code Section 51.020(B), the 2018 Permit, the 2020 Permit, and the 2023 Permit prohibited Safety-Kleen from discharging petroleum, oil, non-biodegradable cutting oil, or products of mineral oil origin in amounts that will cause interference or pass through.

55. 2018 Code Section 51.020(B), the 2018 Permit, the 2020 Permit, and the 2023 Permit prohibited Safety-Kleen from discharging any wastewater which causes a hazard to human life or creates a public nuisance.

56. Clean Water Act Section 308(a), 33 U.S.C. § 1308(a), authorizes the imposition of reporting, recordkeeping, sampling, and access to information requirements relevant to compliance with effluent limitations or other limitations or prohibitions, effluent standards, pretreatment standards, or standards of performance.

57. 40 C.F.R. § 403.12(f), 2018 Code Chapter 51, the 2018 Permit, the 2020 Permit, and the 2023 Permit required Safety-Kleen to notify ECSD immediately of all discharges that could cause problems to the ECSD POTW, including any slug loading by Safety-Kleen.

58. 2018 Code Chapter 51 requires that Safety-Kleen provide immediate telephone notification of any discharge that might cause potential problems for the POTW include information about the location of the discharge, the type of waste, the concentration and volume, if known, and corrective actions taken by Safety-Kleen.

59. The 2018 Permit, the 2020 Permit, and the 2023 Permit required Safety-Kleen to alert ECSD immediately upon occurrence of an accidental or a non-accidental discharge of either prohibited substances or an excess of regulated substances to the ECSD POTW.

60. Within five working days of the occurrence of an accidental or a non-accidental discharge of either prohibited substances or an excess of regulated substances to the ECSD POTW, the 2018 Permit, the 2020 Permit, and the 2023 Permit required Safety-Kleen to send ECSD a written follow-up notification with information about the location of the discharge, the date and time of the discharge, the type of waste discharged, the concentration and volume of the waste, and the corrective actions taken.

Federal Enforcement of Pretreatment Program and Reporting Requirements

61. The above-referenced requirements and prohibitions of Code Chapter 51 and the Facility Permits are requirements imposed in a pretreatment program approved under CWA Section 402, 33 U.S.C. § 1342, within the meaning of CWA Section 309(d), 33 U.S.C. § 1319(d).

62. The above-referenced incident notification requirements imposed in 40 C.F.R. Part 403 also are federally enforceable reporting and access to information requirements under CWA Section 308(a), 33 U.S.C. § 1318(a).

63. The best management practices required by Code Chapter 51 and the Facility Permits are local limits which are deemed to be federally enforceable effluent standards or prohibitions or pretreatment standards under 40 C.F.R. § 403.5(c)(4) and CWA Section 307(d), 33 U.S.C. § 1317(d).

64. The Specific Pollutant Limitations imposed by Code Chapter 51 and the Facility Permits are local limits which are deemed to be federally enforceable effluent standards or prohibitions or pretreatment standards under 40 C.F.R. § 403.5(d) and CWA Section 307(d), 33 U.S.C. § 1317(d).

65. The Categorical Limitations imposed by 40 C.F.R. § 437.25 and the Facility Permits are federally enforceable effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

66. CWA Section 307(d), 33 U.S.C. § 1317(d), provides that "after the effective date of any effluent standard or prohibition or pretreatment standard promulgated under this section, it shall be unlawful for any owner or operator of any source to operate any source in violation of such effluent standard or prohibition or pretreatment standard."

67. CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates, *inter alia*, any pretreatment requirements imposed in accordance with CWA Section 307(d), 33 U.S.C. § 1317(d), including any effluent standard or prohibition or pretreatment standard (and any pretreatment-related local limits imposed upon an industrial user by a local ordinance or an industrial user permit issued under 40 C.F.R. § 403.8).

68. CWA Section 309(b), 33 U.S.C. § 1319(b), also authorizes EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates, *inter alia*, any reporting, recordkeeping, sampling, or access to information requirement imposed in accordance with CWA Section 308(a), 33 U.S.C. § 1318(a).

69. CWA Section 309(d), 33 U.S.C. § 1319(d), provides that any person who violates any of these requirements shall be subject to a civil penalty of up to $25,000 per day for each violation.

70. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended (the "CPIAA"), EPA has promulgated and periodically updates a Civil Monetary Penalty Inflation Adjustment Rule to adjust certain statutory maximum penalty amounts for inflation. *See* 28 U.S.C. § 2461 note; 40 C.F.R. Part 19. Under the current version of that rule, the maximum civil penalty under CWA Section 309(d) is $68,445 per day for each violation for violations that occur or occurred after November 2, 2015, where the penalties are assessed on or after January 8, 2025. *See* 90 Fed. Reg. 1375, 1377 (Jan. 8, 2025).

**THE DEFENDANT'S INCIDENTS AND VIOLATIONS**

Time Span of the Alleged Violations

71. This Complaint seeks civil penalties and injunctive relief for the violations alleged herein for the period of time commencing on April 10, 2017.

72. Before this Complaint was filed, Safety-Kleen entered into a series of statute of limitations tolling agreements with the United States. Under those tolling agreement, Safety-Kleen agreed that the period commencing on March 1, 2022, and ending on March 1, 2025, inclusive, shall not be included in computing the running of any statute of limitations potentially applicable to any action brought by the United States for violations of the Clean Water Act, the General Pretreatment Regulations for Existing and New Sources of Pollution at 40 C.F.R. Part 403, and the Industrial Wastewater Discharge Permits for Outfall No. 901 issued by ECSD for the Safety-Kleen Facility.

Effluent Limit Violations

73. Since April 10, 2017, Safety-Kleen has violated discharge limits for one or more pollutant parameters on most days that the Safety-Kleen Facility's effluent has been tested.

74. Since April 10, 2017, Safety-Kleen has violated discharge limits imposed by the Pretreatment Regulations, Code Section 51, and/or the Facility Permits on multiple occasions, including the limits for ammonia, bis (2-ethylhexyl) phthalate, copper, cyanide, fluoride, lead, mercury, n-octadecane, oil and grease, phenols, pH, and zinc.

April 2023 Polymer Overdosing Incident and Excess Oils/Solids/Sludge in Tank 602

75. In April 2023, Safety-Kleen completed installation and commenced use of a new dissolved air flotation ("DAF") unit for its on-site wastewater pre-treatment system at the Facility. The previous DAF unit had deteriorated and its efficacy in removing pollutants from the Facility's wastewater had degraded and/or ceased.

76. On or about April 10, 2023, Safety-Kleen began the chemical addition of polymer to its newly installed DAF unit.

77. Safety-Kleen overdosed the polymer added to the DAF unit and thereby caused a series of problems that impaired and degraded the overall efficacy of the Facility's on-site wastewater pretreatment system.

78. The excess polymer that Safety-Kleen added to the DAF unit reached Tank 602 in the system, where the excess polymer captured accumulated oil and solids in that tank.

79. The oil and solids captured by the excess polymer were then carried into the system's biological treatment tanks and clarifier.

80. This resulted in exceedances of the applicable daily maximum limits for oil and grease and phenols in Safety-Kleen's discharge to Outfall No. 901, as measured in samples taken by ECSD on April 12, 2023.

81. Safety-Kleen did not give ECSD notice of this polymer overdosing incident until April 14, 2023.

82. In the months after its report of the April 2023 polymer overdosing incident, Safety-Kleen experienced additional exceedances of its daily maximum discharge limits for phenols and mercury, as measured in samples taken by ECSD on April 24, 2023, May 18, 2023, and June 19, 2023, and August 3, 2023.

83. Safety-Kleen attributed those phenols and mercury discharge limit violations in April-August 2023 to the polymer overdosing incident, the excess oils/solids/sludge in Tank 602, and a mechanical failure of blowers for the pre-treatment system's biological treatment tanks.

December 2023 Chlorine Bleach Release

84. As part of its on-site wastewater pretreatment process at the Safety-Kleen Facility, Safety-Kleen utilizes a system designed for controlled dosing of chlorine bleach used as a wastewater treatment chemical (the "Bleach Dosing System").

85. On or before the morning of December 19, 2023, an employee operator of Safety-Kleen's on-site wastewater pre-treatment plant allowed bleach to be dosed to the Facility's wastewater at an excessive rate until the Bleach Dosing System's bleach storage tank was emptied.

86. Safety-Kleen's wastewater pre-treatment system then discharged Safety-Kleen's bleach-laden wastewater to ECSD's sewer system through Outfall No. 901.

87. By 10:00 a.m. on December 19, 2023, Safety-Kleen's discharge of bleach-laden wastewater triggered a high chlorine alarm and caused a strong chlorine odor at ECSD's Canal Street Pump Station, located between Safety-Kleen's Outfall No. 901 and the ECSD POTW.

88. By 10:30 a.m. on December 19, 2023, ECSD's Pretreatment Coordinator visited the Safety-Kleen Facility to investigate the cause of the chlorine alarm and odor at ECSD's Canal Street Pump Station.

89. During the ECSD Pretreatment Coordinator's visit to the Facility, the operator of Safety-Kleen's on-site wastewater pre-treatment plant confirmed that the Bleach Dosing System's bleach storage tank was empty.

90. Several hours later – at approximately 2:00 p.m. on December 19, 2023 – Safety-Kleen's Environmental Compliance Manager for the Facility telephoned the ECSD Pretreatment Coordinator and reported that 400-500 gallons of chlorine bleach had been dosed to the Facility's wastewater at an abnormally high rate before 10:30 that morning due to improper control of the Bleach Dosing System.

91. Safety-Kleen memorialized its 2:00 p.m. oral report of its bleach release to ECSD in a written "Slug Discharge/Operating Upsets" report.

<u>January 2024 Oily Wastewater Discharges</u>

92. At some point commencing on or about January 20, 2024, Safety-Kleen began experiencing problems with several pieces of equipment used for its on-site wastewater pre-treatment system at the Facility.

93. The skimmer for the dissolved air floatation unit in the Facility's pre-treatment system stopped operating over the weekend of January 20-21, 2024, and was not returned to service until January 23, 2024.

94. A sludge return pump for a clarifier in the Facility's pre-treatment system stopped operating on January 22, 2024, but was returned to service later that day.

95. During and after experiencing those equipment problems in January 2024, Safety-Kleen discharged wastewater with unusually high oil and grease concentrations through Outfall No. 901 to ECSD's sewer system.

96. On January 23, 2024, ECSD staff began noticing an unusual petroleum odor while performing repairs at ECSD's Alder Street Pump Station, which is located between Outfall No. 901 and ECSD's POTW.

97. On January 24, 2024, ECSD staff began noticing petroleum odors at ECSD's Canal Street Pump Station and also observed unusually dark wastewater with an oil sheen entering ECSD's POTW.

98. On January 24, 2024, ECSD staff inspected and collected wastewater samples at the Safety-Kleen Facility.

99. The ECSD inspectors observed Safety-Kleen discharging brownish malodorous wastewater through Outfall No. 901 during their visit to the Facility on January 24, 2024.

100. The analytical results for the wastewater sample that ECSD staff collected from Outfall No. 901 on January 24, 2024, showed that the oil and grease concentration was 11,500 milligrams per liter, which was nearly 100 times the 117 milligrams per liter daily maximum discharge limit for oil and grease imposed by Code Chapter 51 and the 2023 Permit.

101. The analytical results for the wastewater sample that ECSD staff collected from Outfall No. 901 on January 24, 2024, also showed that discharged wastewater violated Safety-Kleen's discharge limits for copper, cyanide, lead, mercury, n-octadecane, and zinc.

102. Before ECSD's inspection of the Safety-Kleen Facility on January 24, 2024, Safety-Kleen did not notify ECSD of its problems on the preceding days with the equipment used for the Facility's on-site wastewater pre-treatment system.

103. Before ECSD's inspection of the Safety-Kleen Facility on January 24, 2024, Safety-Kleen did not notify ECSD of its discharge of wastewater with unusually high oil and grease concentrations to Outfall No. 901 on the preceding days.

104. On January 25, 2024, staff from EPA and IDEM inspected the Safety-Kleen Facility and ECSD's POTW.

105. During their visit to the Safety-Kleen Facility on January 25, 2024, the EPA and IDEM inspectors were unable to access components of the on-site wastewater pre-treatment system due to wet and hazardous conditions caused by standing wastewater in its secondary containment area.

106. During the EPA and IDEM inspectors' visit to the Safety-Kleen Facility on January 25, 2024, Safety-Kleen representatives reported that all problems with the equipment used for its on-site wastewater pre-treatment system had been remedied.

107. During the EPA and IDEM inspectors' visit to the Safety-Kleen Facility on January 25, 2024, Safety-Kleen representatives also reported that Safety-Kleen was still discharging oily wastewater to Outfall No. 901 that had been generated and accumulated during the problems with the equipment used for its on-site wastewater pre-treatment system.

108. During their visit to the POTW on January 25, 2024, the EPA and IDEM inspectors detected petroleum odors and/or observed oil sheens at the influent Parshall Flume for the POTW, within the POTW's treatment processes, and in the Grand Calumet River near the POTW's main discharge outfall.

109. After a request made during the January 25, 2024, inspection of the POTW by EPA and IDEM, ECSD placed absorbent booms in the POTW's discharge channel and disinfection channel to limit further discharges of oil from the POTW to the Grand Calumet River.

110. Safety-Kleen's discharge of oily wastewater through Outfall No. 901 in January 2024 caused ECSD to violate its own NPDES discharge permit, which prohibits any discharge from the POTW that causes a visible oil sheen on the receiving water.

<u>Pass Through Incidents</u>

111. In at least some instances, pollutants in Safety-Kleen's wastewater discharges to Outfall No. 901 have passed through and exited ECSD's POTW into the Grand Calumet River in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, caused violations of requirements of ECSD's NPDES permit.

<u>Discharge Incident Notifications</u>

112. In at least some instances, Safety-Kleen failed to give ECSD immediate and sufficient notifications that Safety-Kleen experienced: (i) a discharge that might cause potential problems for ECSD's POTW; and/or (ii) an accidental or a non-accidental discharge of either prohibited substances or an excess of regulated substances to ECSD's POTW.

**<u>FIRST CLAIM FOR RELIEF</u>**
**<u>(Cyanide Limit Violations)</u>**

113. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

114. In accordance with the Facility Permits, the wastewater discharged from Outfall No. 901 typically has been sampled by ECSD and then analyzed for cyanide once or twice per month.

115. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the cyanide content of the wastewater discharged from Outfall No. 901 through samples taken and analyzed at least once every six months.

116. On multiple occasions since April 10, 2017, ECSD's sampling for cyanide in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable cyanide concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

117. On multiple occasions since April 10, 2017, Safety-Kleen's self-monitoring of cyanide in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable cyanide concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

118. Those cyanide discharge limit violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

119. Unless enjoined, the types of violations alleged in this Claim will continue.

120. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

## SECOND CLAIM FOR RELIEF
## (Fluoride Limit Violations)

121. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

122. In accordance with the Facility Permits, the wastewater discharged from Outfall No. 901 typically has been sampled by ECSD and then analyzed for fluoride once or twice per month.

123. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the fluoride content of the wastewater discharged from Outfall No. 901 through samples taken and analyzed at least once every six months.

124. On multiple occasions since April 10, 2017, sampling for fluoride in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable fluoride concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

125. Those fluoride discharge limit violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

126. Unless enjoined, the types of violations alleged in this Claim will continue.

127. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

## THIRD CLAIM FOR RELIEF
## (Mercury Limit Violations)

128. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

129. In accordance with the Facility Permits, the wastewater discharged from Outfall No. 901 typically has been sampled by ECSD and then analyzed for mercury once or twice per month.

130. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the mercury content of the wastewater discharged from Outfall No. 901 through samples taken and analyzed at least once every six months.

131. On multiple occasions since April 10, 2017, ECSD's sampling for mercury in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable mercury concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

132. Since April 10, 2017, Safety-Kleen's self-monitoring of mercury in the wastewater discharged from Outfall No. 901 has demonstrated that Safety-Kleen violated the applicable mercury concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

133. Those mercury discharge limit violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

134. Unless enjoined, the types of violations alleged in this Claim will continue.

135. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**FOURTH CLAIM FOR RELIEF**
**(n-Octadecane Limit Violations)**

136. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

137. In accordance with the Facility Permits, the wastewater discharged from Outfall No. 901 typically has been sampled by ECSD and then analyzed for n-octadecane at least once every six months, and at times as frequently as twice per month.

138. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the n-octadecane content of the wastewater discharged from Outfall No. 901 through samples taken and analyzed at least once every six months.

139. On multiple occasions since April 10, 2017, sampling for n-octadecane in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable n-octadecane concentration daily maximum limit imposed by 40 C.F.R. § 437.25 and the Facility Permits.

140. Those n-octadecane daily maximum discharge limit violations constituted violations of Pretreatment Standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

141. In February 2021, sampling of the wastewater discharged from Outfall No. 901 also demonstrated that Safety-Kleen violated the applicable maximum monthly average concentration limit for n-octadecane imposed by 40 C.F.R. § 437.25 and the 2020 Permit.

142. That monthly average discharge limit violation for n-octadecane constituted a violation of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

143. Unless enjoined, the types of violations alleged in this Claim will continue.

144. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

## FIFTH CLAIM FOR RELIEF
## (Oil and Grease Limit Violations)

145. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

146. In accordance with the Facility Permits, the wastewater discharged from Outfall No. 901 typically has been sampled by ECSD and then analyzed for oil and grease once or twice per month.

147. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the oil and grease content of the wastewater discharged from Outfall No. 901 through samples taken and analyzed at least once every six months.

148. On multiple occasions since April 10, 2017, sampling for oil and grease in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable oil and grease concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

149. Those oil and grease discharge limit violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

150. Unless enjoined, the types of violations alleged in this Claim will continue.

151. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**SIXTH CLAIM FOR RELIEF**
**(Phenols Limit Violations)**

152. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

153. In accordance with the Facility Permits, the wastewater discharged from Outfall No. 901 typically has been sampled by ECSD and then analyzed for phenols once or twice per month.

154. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the phenols content of the wastewater discharged from Outfall No. 901 through samples taken and analyzed at least once every six months.

155. On multiple occasions since April 10, 2017, sampling for phenols in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable phenols concentration daily maximum limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

156. Those phenols discharge limit violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

157. Unless enjoined, the types of violations alleged in this Claim will continue.

158. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**SEVENTH CLAIM FOR RELIEF**
**(pH Limit Violations)**

159. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

160. In accordance with the Facility Permits, the pH of the wastewater discharged from Outfall No. 901 typically has been monitored by ECSD once or twice per month.

161. In accordance with the Facility Permits, Safety-Kleen also must self-monitor the pH of the wastewater discharged from Outfall No. 901 at least once every six months.

162. On multiple occasions since April 10, 2017, pH monitoring in the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable pH limit imposed as a local limit by Code Chapter 51 and the Facility Permits.

163. Those pH discharge limit violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

164. Unless enjoined, the types of violations alleged in this Claim will continue.

165. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**EIGHTH CLAIM FOR RELIEF**
**(Discharge Limit Violations for Certain Metals)**

166. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

167. On January 24, 2024, sampling of the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable daily maximum concentration limits for several pollutant parameters – including copper, lead, and zinc – imposed by 40 C.F.R. § 437.25 and the 2023 Permit.

168. Those daily maximum discharge limit violations for copper, lead, and zinc constituted violations of Pretreatment Standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

169. In January 2024, sampling of the wastewater discharged from Outfall No. 901 also demonstrated that Safety-Kleen violated the applicable maximum monthly average concentration limits for copper and zinc imposed by 40 C.F.R. § 437.25 and the 2023 Permit.

170. Those monthly average discharge limit violations for copper and zinc constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

171. Unless enjoined, the types of violations alleged in this Claim will continue.

172. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

## **NINTH CLAIM FOR RELIEF**
## **(Discharge Limit Violations for Other Pollutants)**

173. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

174. Since April 10, 2017, sampling of the wastewater discharged from Outfall No. 901 demonstrated that Safety-Kleen violated the applicable daily maximum concentration limits for

other pollutant parameters – including ammonia and bis (2-ethylhexyl) phthalate – imposed by 40 C.F.R. § 437.25, Code Chapter 51, and the Facility Permits.

175. Those daily maximum discharge limit violations for those pollutants constituted violations of Pretreatment Standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

176. In February 2020, sampling of the wastewater discharged from Outfall No. 901 also demonstrated that Safety-Kleen violated the applicable maximum monthly average concentration limit for bis (2-ethylhexyl) phthalate imposed by 40 C.F.R. § 437.25 and the 2018 Permit.

177. That monthly average discharge limit violation for bis (2-ethylhexyl) phthalate constituted a violation of an effluent standard or prohibition or pretreatment standard under CWA Section 307(d), 33 U.S.C. § 1317(d).

178. Unless enjoined, the types of violations alleged in this Claim will continue.

179. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

## TENTH CLAIM FOR RELIEF
## (Pass Through Violations)

180. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

181. Pollutants in Safety-Kleen's wastewater discharges to Outfall No. 901 have passed through and exited ECSD's POTW into the Grand Calumet River in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, caused violations of requirements of ECSD's NPDES permit.

182. Safety-Kleen's discharge of oily wastewater through Outfall No. 901 in January 2024 caused ECSD to violate its NPDES permit, which prohibits any discharge from the POTW that causes a visible oil sheen on the receiving water.

183. On multiple occasions since April 10, 2017, pollutants in Safety-Kleen's wastewater discharges to Outfall No. 901 have caused ECSD to violate its NPDES discharge limits for cyanide, mercury, and/or other pollutant parameters.

184. By discharging pollutants to Outfall No. 901 that caused pass through discharges at ECSD's POTW, Safety-Kleen violated prohibitions in 40 C.F.R. §§ 403.5(a)(1) and 403.5(b)(6), Code Chapter 51, and the Facility Permits.

185. Those pass through violations constituted violations of effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d).

186. Unless enjoined, the types of violations alleged in this Claim will continue.

187. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

## ELEVENTH CLAIM FOR RELIEF
## (Discharge Incident Notification Violations)

188. The allegations set forth in Paragraphs 1 through 112 are incorporated herein by reference.

189. When Safety-Kleen overdosed the addition of polymers to its DAF in April 2023 and caused problems that decreased the efficacy of its on-site wastewater pre-treatment system, Safety-Kleen failed to give ECSD immediate and sufficient notice of: (i) a discharge that might cause potential problems for ECSD's POTW; and/or (ii) an accidental or a non-accidental discharge of either prohibited substances or an excess of regulated substances to ECSD's POTW.

That violated 40 C.F.R. § 403.12(f) and local limits imposed by Code Chapter 51 and Safety-Kleen's 2020 Permit.

190. When Safety-Kleen discharged bleach-laden wastewater to ECSD's sewer system through Outfall No. 901 in December 2023, Safety-Kleen failed to give ECSD immediate and sufficient notice of: (i) a discharge that might cause potential problems for ECSD's POTW; and/or (ii) an accidental or a non-accidental discharge of either prohibited substances or an excess of regulated substances to ECSD's POTW. That violated 40 C.F.R. § 403.12(f) and local limits imposed by 2018 Code Chapter 51 and Safety-Kleen's 2023 Permit.

191. When Safety-Kleen discharged wastewater with unusually high concentrations of oil and grease to ECSD's sewer system through Outfall No. 901 in January 2024, Safety-Kleen failed to give ECSD immediate and sufficient notice of: (i) a discharge that might cause potential problems for ECSD's POTW; and/or (ii) an accidental or a non-accidental discharge of either prohibited substances or an excess of regulated substances to ECSD's POTW. That violated 40 C.F.R. §403.12(f) and local limits imposed by 2018 Code Chapter 51 and Safety-Kleen's 2023 Permit.

192. These discharge incident notification violations constituted violations of: (i) effluent standards or prohibitions or pretreatment standards under CWA Section 307(d), 33 U.S.C. § 1317(d); (ii) requirements imposed in a pretreatment program approved under CWA Section 402, 33 U.S.C. § 1342; and/or (iii) reporting and access to information requirements under CWA Section 308(a), 33 U.S.C. § 1318(a).

193. Unless enjoined, the types of violations alleged in this Claim will continue.

194. Safety-Kleen's violations of the Clean Water Act, as set forth in this Claim, make Safety-Kleen subject to injunctive relief and civil penalties of up to $68,445 per day per violation, pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, prays that the Court:

1. Enjoin Defendant from further violations of the CWA and order Defendant to take all steps necessary to achieve compliance with the CWA;
2. Order the Defendant to pay a civil penalty to the United States of up to $68,445 per day for each violation of the CWA;
3. Award the Plaintiff its costs of this action; and
4. Grant the Plaintiff such further relief as the Court deems just and proper.

Signature Page for Complaint in *United States v. Safety-Kleen System, Inc.* (N.D. Ind.)

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated: April 10, 2025

s/ *Kristin M. Furrie*
KRISTIN M. FURRIE, Senior Counsel
SAMANTHA M. RICCI, Trial Attorney
RANDALL M. STONE, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

TINA L. NOMMAY
Acting United States Attorney
Northern District of Indiana

WAYNE T. AULT
Assistant United States Attorney
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

Of Counsel

ADAM MITTERMAIER
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 5