**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff, and**<br><br>**THE STATE OF INDIANA,**<br><br>**Plaintiff-Intervenor,**<br><br>**v.**<br><br>**SAFETY-KLEEN SYSTEMS, INC., EAST CHICAGO SANITARY DISTRICT, and CITY OF EAST CHICAGO,**<br><br>**Defendants.** | **Case No. 2:25-cv-167** |

**ORDER AND STIPULATION REGARDING DISCOVERY PROCEDURE**

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the Parties mutually seek to reduce the time, expense and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the Parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I. DEFINITIONS

1. The terms used in this stipulation and order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules, unless otherwise provided in this stipulation and order. Whenever the terms set forth below are used in this stipulation and order, the following definitions apply:

(a) "Draft," when used to describe either an electronic or hard copy document, means "a preliminary version of a document that has been shared by the author with another person (by e-mail, print, or otherwise) or the most recent version at the time of collection."

(b) "Document Family" means a group of related documents including parent and child documents. A parent document is an electronic file that has at least one other electronic file attached to it or embedded within it. A child document is an electronic file that is attached to or embedded within another electronic file.

(c) "Duplicate," when used to describe either an electronic or hard copy document, means that the document does not show any facial differences, such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes. Differences in system metadata fields, such as date created or modified, that do not affect the face of the document, are not relevant to determining whether the document is a duplicate.

(d) "Embedded e-mails" means earlier e-mail(s) in a string of e-mail communications that are included as part of the top-level e-mail.

(e) "Gigabyte" means one billion bytes or 1,000 megabytes.

(f) "Parties" means the parties to this litigation, including their employees and agents.

(g) "Policy" means a regular practice at an entity that managers know about and expect to be carried out.

## II. SCOPE

2. The Parties agree that the provisions of this Order concern only data, materials, and information otherwise within the scope of discovery under Fed. R. Civ. P. 26.

3. The Parties also agree that nothing in this Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, any objection(s) that the Party believes in good faith it has to the collection, review, or production of any requested discovery or ESI.

## III. PRESERVATION

4. ESI That Is Not Reasonably Accessible. The following categories of ESI listed below are not reasonably accessible in this litigation:

(a) Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows, or automated generation of versions of files, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

(b) Voice-mail messages;

(c) Instant messages, such as chats sent on Microsoft Teams or Google Chat;

(d) Electronic mail sent to or from a smartphone or tablet (e.g., iPad) provided that a copy of such e-mail is routinely saved elsewhere;

(e) Other electronic data stored on a smartphone or tablet, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

(f) Logs of calls made from cellular phones;

(g) Deleted computer files, whether fragmented or whole (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

(h) Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(i) Data that is not accessible through the operating system installed on a device;

(j) Data stored on photocopiers, scanners, and fax machines;

(k) Server, system, or network logs;

(l) Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form; and

(m) Data stored on electronic systems that were no longer in use five years before the complaint was filed.

5. Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible.

6. The Parties need not preserve, for this litigation, the categories of ESI listed in paragraph 4 unless, on the date that this stipulation and order is entered by the Court, either Party has a Policy that results in the routine preservation of such ESI, in which case such Party shall continue to preserve such ESI in accordance with its Policy.

7. <u>No Discovery of Material Not Required To Be Preserved</u>. The Parties shall not seek discovery of categories of ESI identified in paragraph 4 above. If any discovery request is

susceptible of a construction that calls for the production of categories of ESI identified in paragraph 4, such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

8. Use of Documents During Litigation. Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI without breaching their duty to preserve documents and ESI:

(a) The Parties may continue to work, in the ordinary course of business, on documents that do not meet the definition of Draft in paragraph 1. However, the Parties shall preserve Draft documents for discovery.

(b) The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the complaint was filed in this matter. Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the complaint was filed in this matter.

(c) The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, that must be produced pursuant to Section VII of this Order.

(d) The Parties may move data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, that must be produced pursuant to Section VII of this Order.

(e) The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata

fields that must be produced under this order and does not convert the format of the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

(f) The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered.

(g) The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

(h) The Parties may edit or take down any data on a publicly accessible internet site.

(i) The Parties may add data to an intranet or private website. The Parties may edit or take down any data on an intranet or private website, provided that a copy of the data is made before the change and is preserved for discovery.

(j) The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata required to be produced under this Order or significantly degrade the quality of the data.

(k) The Parties may update social media sites, but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

9. Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

10. Other Preservation Obligations Not Affected. Nothing in this Order affects any obligations of the Parties to preserve documents or information for purposes other than this litigation, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

## IV. COLLECTION

11. ESI that is not proportional. The broadest possible collection may not be appropriate "to secure the just, speedy, and inexpensive determination" of proceeding. *See* Fed. R. Civ. P. 1. Having considered the amount of discovery that would be proportional to the needs of this case, the Parties agree as follows:

(a) When collecting ESI from Microsoft 365—including email in the Microsoft cloud, and documents and ESI stored on SharePoint, OneDrive, and Microsoft Teams—the Parties may place any combination of the following limitations on their eDiscovery collections:

(1) enable deduplication when collecting Microsoft Exchange content;

(2) choose an output option that includes all items that meet the search criteria, including the entire Document Family, but does not automatically include an item and its family members merely because the item has unrecognized format, is encrypted, or is not fully indexed for other reasons;

(3) choose not to collect versions for items on SharePoint, OneDrive, or Teams; or

(4) exclude "Recoverable Items" folders when collecting or processing email, provided that there is no indication that the custodian has failed to implement or comply with an appropriate and timely litigation hold.

(b) Nothing in this order prohibits a Party from objecting to discovery requests on account of proportionality. By way of illustration and not limitation, that may include limitations on date range or custodians.

12. Hyperlinked documents. If an email or other document or ESI that is responsive to a discovery request includes a hyperlink to another document or source of ESI, the Parties need not collect and produce the hyperlinked material if it does not meet the search and collection criteria: (a) agreed upon by the Parties; or (b) if the Parties have not agreed, disclosed by the producing Party. If hyperlinked documents are collected because they independently meet the search and collection criteria, they need not be treated as part of the Document Family for purposes of Bates numbering or producing metadata, including document load files.

13. Targeted Requests. After reviewing documents or ESI produced in response to a discovery request, a Party may, after meeting and conferring, propound proportional, targeted requests for the production of ESI that a Party has chosen not to collect or process pursuant to paragraphs 11 or 12 above. Nothing in this order prevents a party from opposing such discovery requests on any grounds, including proportionality.

14. Filtering. The Parties may de-NIST electronic files, removing known, traceable software applications in the National Software Reference Library ("NIST List"), available at: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download.

15. Deduplication.

(a) *Deduplication of e-mail.* The Parties may deduplicate e-mail.

(b) The Parties hereby stipulate and agree that in this matter there is a rebuttable presumption of evidence that an e-mail correctly addressed to a recipient was actually delivered to that recipient's e-mail inbox. This stipulation does not apply to draft e-mails.

(c) *Deduplication of ESI other than e-mail*. The Parties may globally deduplicate ESI other than e-mail. If the Parties globally deduplicate ESI other than e-mail, the Parties will provide metadata listing all custodians who possessed a copy of the document, as well as all relevant file paths for each copy of ESI, other than e-mail, the Party produces.

16. Search Technology.

(a) If a Party intends to use search terms to limit its collection, review, or production of ESI, it shall include in its response to a request for production a table describing: (i) the collections of ESI for which it proposes to use search terms; (ii) the search terms that it proposes to use for each collection; and (iii) the computer software or technologies it proposes to use to carry out the search in each collection. If the requesting Party wishes to obtain more information about the proposed search or objects to some or all of the proposed search protocol, it must notify the producing Party within 21 days. Nothing in this paragraph obligates any Party to agree to perform an electronic search. Failure to object within this timeframe does not preclude the requesting Party from later seeking additional discovery or raising deficiencies with the producing Party's production.

(b) Nothing in this paragraph obligates any Party to agree to perform an electronic search or to accept the results of an electronic search as a sufficient response to a discovery request.

17. Third-Party Data. The Parties shall meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Microsoft, or any social media companies such as Facebook or X.

18. Privileged Materials Located in the Offices of Counsel. The Parties agree that, in response to general discovery requests, the Parties need not collect any privileged or work product material that is located in the offices, electronic devices, and electronic accounts of the U.S. Department of Justice, the Indiana Attorney General's Office, Squire Patton Boggs, Barnes & Thornburg, Faegre Drinker Biddle & Reath, or Joseph Allegretti (collectively, "Offices of Counsel"). The Parties understand that such materials will not be produced or placed on a privilege log. This paragraph does not apply to any documents, ESI, or tangible things located outside of the Offices of Counsel, even if they are duplicates of materials located inside the Offices of Counsel. For example, if an attorney sends a privileged e-mail to an employee of a Party, the copy of the e-mail located in Offices of Counsel need not be collected, but the copy of the e-mail received by the employee, along with any attachments, must be collected and placed on a privilege log (unless it falls into one of the categories exempt from privilege logging pursuant to paragraph 41). The Parties need not search collections of documents and ESI gathered solely for litigation in another matter.

## V. PROCESSING

19. The Parties shall use reasonable efforts to process ESI for production in accordance with Section VII of this Stipulation and Order. If a Party identifies ESI that the Party reasonably expects may be responsive but that cannot be processed with reasonable effort, e.g., corrupt files or password-protected files for which the password is not known, it shall promptly identify such ESI to the requesting Party in a table that includes the following information: custodian name, filename, and file path.

20. The Parties need not extract and process embedded files as though they were separate files, if the Parties are technically able to suppress the extraction of embedded files during processing. After production, a receiving Party may request that native files be produced for documents and ESI that appear to contain embedded files but for which the embedded files are not fully viewable.

## VI. REVIEW

### A. Technology Assisted Review.

21. If a Party intends to use technology assisted review ("TAR") to limit its collection, review, or production of ESI, it shall include in its response to a request for production the TAR protocol it will follow, including: (i) the collections of ESI for which it proposes to use TAR; (ii) any applicable restrictions (e.g., date range restrictions, excluded file types or sizes); (iii) the confidence levels and intervals; and (iv) the computer software or technologies it proposes to use to carry out the TAR. If the requesting Party wishes to obtain more information about the proposed TAR protocol or objects to some or all of the proposed TAR protocol, it must notify the producing Party within 21 days. Nothing in this paragraph obligates any Party to agree to use TAR. Failure to object within this timeframe does not preclude the requesting Party from later seeking additional discovery or raising deficiencies with the producing Party's production.

### B. 502(d) Order.

22. This Order invokes Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, as well as the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) do not apply to the disclosure of communications or information in discovery in this matter.

23. The prosecution and defense of this action will require each Party to review and to disclose large quantities of information and documents, including ESI, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden on the Parties' resources.

24. Each Party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the party can make available, and nothing contained in this order limits a Party's right to review documents or ESI for responsiveness, privileged, or protected information before production. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence that disclosure of attorney-client privilege or work-product protection protected information or documents in connection with this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

25. The Court further orders that because expedited or truncated privilege review is likely necessary for the just, speedy, and inexpensive resolution of this matter, the disclosure of privileged or protected information or documents, other than those protected by attorney-client privilege or work-product protection, in discovery conducted in this litigation will be deemed unintentional, inadvertent, and compelled by order of this Court. Such disclosure will not constitute a waiver of the disclosing party's right to claim any privilege or protection, including without limitation the deliberative process privilege, that would have applied to the information

or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed procedures reasonably designed to screen out privileged materials.

26. Regardless of whether the procedures to screen out privileged materials were reasonable, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation.

27. Notwithstanding the foregoing, the Parties agree that any Document(s) used by any Party in a deposition, expert report, or court hearing, or filing in this action (with the exception of a motion related to a disputed privilege claim or a disputed confidentiality designation) ("Used Document") which a producing Party does not provide written notice of a claw back within 45 days of its initial use, shall be ineligible for claw back under this order. The Parties further agree that if only a portion of a Used Document is subject to a claw back request, and the portion of the Used Document requiring redaction was not referenced by any Party in a deposition, expert report, or court hearing or filing in this action, then the Used Document will only be deemed ineligible for claw back under this order if the producing Party does not provide written notice of a claw back within 60 days of its initial use.

28. A notice seeking the return, sequestration, or destruction of privileged or protected material must identify each document and the date it was produced. If the producing Party claims that only a portion of a document is privileged or protected, the producing Party shall provide, along with the notice of the claim of privilege or protection, a new copy of the document with the allegedly privileged or protected portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

29. In order to promote the orderly conduct of depositions and to minimize the number of disputes that may require intervention of the Court or the re-opening of a concluded deposition, the following procedure will apply to potentially privileged or protected documents at deposition. If a Party determines that it wishes to make a claim of privilege or protection on a document used at a deposition, it may assert the privilege or protection when the document is first introduced and instruct the witness not to answer questions about the document, or it may allow the questioning about the document to proceed. Allowing the questioning about a document to proceed does not, by itself, waive any claim of privilege or protection over the document, or the information contained in the document, the questions, or the responses, provided that the Party that wishes to make a claim of privilege or protection over the document comply with the provisions of paragraph 27 above, and provided that the Party that wishes to make a claim of privilege or protection over any testimony during the deposition and indicates in writing which portions of the transcript it proposes to redact by the witness's deadline to provide corrections to the draft transcript. Nothing in this Order addresses whether privileges may be waived by using a document prior to deposition or trial to prepare a witness.

30. If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege or protection is under a good-faith obligation to notify the Party holding the potential claim of privilege or protection. Such notification will not waive the identifying Party's ability to subsequently challenge any assertion of privilege or protection with respect to the identified document. If the Party holding the potential claim of privilege or protection wishes to assert a claim of privilege, it shall provide notice in accordance with paragraph 27 above within 7 business days of receiving notice from the identifying Party.

31. Upon receiving notice of a claim of privilege or protection on a produced document, the receiving Party shall, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and shall not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. Copies of privileged or protected documents or information that have been stored on electronic media that is not reasonably accessible, such as disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party shall take steps to re-sequester the restored information. If the receiving Party disclosed the information before being notified, it shall take reasonable steps to prevent further use of such information until the claim is resolved.

32. The receipt of inadvertently disclosed privileged information shall not be the basis for disqualifying counsel from this action absent a showing of bad faith in receiving the information.

33. If a Party wishes to dispute a claim of privilege or protection asserted under this Order, such Party may move the Court for an order compelling disclosure, but only after the parties have exhausted their meet and confer obligations under all applicable rules. The Party shall follow the procedures described in Fed. R. Civ. P. 26(b)(5)(B) and shall not assert, as a ground for compelling disclosure, the fact or circumstances of the disclosure. Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

34. The Parties may stipulate to extend the time periods specified in paragraphs 27, 29, 30, or 33 above.

35. Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged or protected and to inform the disclosing Party that such materials have been produced.

36. The Party wishing to assert a claim of privilege or protection retains the burden, upon challenge pursuant to paragraph 33, of establishing the applicability of the claimed privilege or protection.

37. This Order does not preclude a Party from voluntarily waiving any claims of privilege or protection. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged or protected information to support a claim or defense.

**C. Document Families**

38. The Parties may withhold small image files or extracted embedded files that are unresponsive or irrelevant, even if other documents in the same Document Family are responsive.

39. The Parties shall not withhold documents or ESI on a claim of privilege or protection merely because other documents or ESI in the same Document Family are privileged.

**D. Privilege Log**

40. Embedded e-mails.

(a) An e-mail requires only one entry on the privilege log regardless of the number of embedded e-mails contained within the message body of the e-mail in question. For any e-mail that appears on the privilege log, the author, recipient(s), subject, and date fields may be populated with the metadata from the top-level message and is not required to include metadata from any e-mail embedded in the message body.

(b) If an e-mail contains both privileged/protected and non-privileged communications, the non-privileged/protected communications must be produced, either by separately producing a copy of the non-privileged/protected communications embedded in the privileged/protected communication, or by producing a copy of the entire communication string with the privileged/protected portions redacted.

(c) If an e-mail is withheld or any part of it is redacted for privilege or protection, the privilege description on the privilege log must include the basis for withholding each embedded e-mail and the basis for each redaction (unless the communication is exempt from privilege logging pursuant to paragraph 41 below).

(d) If an e-mail is produced with redactions, the redactions must not obscure the headers (from, to, subject, sent date) of any embedded e-mails, unless the identity or contact information of a person, or the subject line is the information that is privileged or protected.

41. The obligation to provide a log of privileged or protected materials pursuant to Rule 26(b)(5)(A) presumptively does not apply to:

(a) Communications exclusively between a Party and its trial counsel;

(b) Work product of trial counsel identified in paragraph 18 above, if created after April 10, 2025;

(c) Internal communications within (i) a law firm; or (ii) a governmental law office.

42. Deliberative Process Privilege Claims. The Parties agree that the United States' assertion of deliberative process privilege may be made by first identifying documents withheld as deliberative process privileged on the privilege log and, second, providing a declaration supporting that assertion within 45 days after service of the privilege log.

## VII. PRODUCTION

43. Procedures for Production. The following procedures apply to producing documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

(a) TIFF Plus Text Productions. Except as stated otherwise below, ESI being produced by a Party shall be converted to 300 dpi, single-page, black-and-white (no shades of gray) TIFF images using CCITT Group IV compression. Where color images are required by this order, the images shall be in the form of .JPG images. Each page must be branded with a unique Bates number, which must not be an overlay of the image. Unless otherwise agreed by the Parties, the TIFF images must be produced on optical media, USB hard drive, or by secure online file transfer, accompanied by: (1) an Opticon™ or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file (or JPG image file for color images) and extracted text file; (2) a "load file" containing the applicable metadata fields described in Appendix A; and (3) Concordance® delimited text files containing extracted or OCR text. The load file must contain Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than "Custodian" and "MD5Hash") if such fields cannot be extracted from a record or if the normal operation of an information system renders such metadata inaccurate, e.g., routinely updates "date created" or "date modified" metadata in the course of performing a designed function.

(b) Paper documents.

(1) Documents printed on paper that is larger than 11 x 17 inches may, at the producing Party's discretion, be produced on paper. Documents produced on paper must

be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond to the categories in the request.

(2) Documents printed on paper that is 11 x 17 inches or smaller must be scanned and produced on CD-ROM, DVD-ROM, or external hard drive, except that East Chicago may permit inspection of such documents in lieu of scanning and electronic production, unless the requesting Party agrees to cover the costs associated with scanning.

(c) Word, WordPerfect, and PDF files.

(1) For Word, WordPerfect, and PDF files, the text files must contain the extracted text from the document, unless the document has been redacted during privilege review, in which case the text files may contain OCR text.

(2) For Word documents that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated showing any comments or tracked changes, if they exist, in the document. For PDF documents, annotations containing text and comments will be captured in the Extracted Text field associated with those documents. The receiving Party has the option, after reviewing the produced TIFF images, to request the native file for any Word or PDF document.

(d) Microsoft PowerPoint files must be processed and produced as full color, half page, JPEG images with one slide per page. Any presenter notes must appear below each slide.

(e) E-mail.

(1) If the producing Party redacts any part of an e-mail before producing it, OCR text may be provided in place of extracted text.

(2) E-mail attachments must be processed as though they were separate documents, and the load file must include a field in which the producing Party identifies, for each e-mail, the Bates range of any attachment.

(f) Microsoft Excel files and other spreadsheets must be produced in native file format in a separate folder on the production media. The load file must contain a field that identifies the file path of the native file corresponding to each document, and the Parties must provide a placeholder TIFF image that shows the name of the native file and has a Bates number. If an MS Excel or other spreadsheet file contains privileged text that must be redacted before production, the producing Party will image the redacted spreadsheet showing all non-privileged hidden columns and provide OCR text for the file.

(g) Digital photographs must be produced as full color .JPG image files at their original resolution with Bates numbers branded onto them.

(h) Microsoft OneNote files may be converted to PDF files prior to processing, review, and production. The Parties need not collect or produce an entire OneNote notebook if only certain sections or pages in the notebook are responsive.

(i) GIS maps that are contained in a folder (with or without subfolders) may, at the producing Party's discretion, be converted to a single ZIP file that contains all of the contents of that folder, even if the folder contains certain files types (e.g., JPG images) that would ordinarily be produced using different procedures pursuant to this paragraph. The producing Party must provide a placeholder TIFF image that shows the name of the ZIP file and has a Bates number. After production of the ZIP file, the receiving Party may initiate a meet and confer about whether any files contained with the ZIP file should be produced as separate documents with their own Bates numbers.

(j) With respect to any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the producing Party may produce the ESI in native format or a reasonably usable form, or may initiate a meet-and-confer to determine a reasonably useable form for the production. If the file is not one of the types described above, the producing Party must provide a placeholder TIFF image that shows the name of the file and has a Bates number. If the Parties have not agreed on a production format for the ESI prior to the production, then Rule 34(b)(2)(E)(iii) shall not apply to the production.

44. The receiving Party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request color .JPG images.

45. Except as stated above, or upon a showing of good cause by the requesting Party, a Party need not produce the same ESI in more than one form.

## VIII. EXPERT DISCOVERY

46. Each Party shall not pursue through discovery, trial subpoena or otherwise:

(a) Notes taken by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

(b) Communications between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

(1) Relate to compensation for an expert's study or testimony;

(2) Identify facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

(3) Identify assumptions that a Party provided and that the expert relied upon in forming the opinions to be expressed.

47. Expert Depositions.

(a) Notwithstanding Fed. R. Civ. P. 26(b)(4)(E), the Parties shall bear the costs of their own testifying experts in responding to discovery, and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

(b) Notwithstanding Fed. R. Civ. P. 30(d)(1), a deposition of a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) is limited to 7 hours of on-the record testimony over one day. Absent agreement of counsel or order of the Court, no deposition of a witness may exceed more than 7 hours of on-the-record testimony in any calendar day, excluding breaks.

48. Expert Productions.

(a) Documents "considered" by expert for the purposes of Fed. R. Civ. P. 26(a)(2)(B)(ii) means those documents that have been received, read, reviewed, or created by the expert for the purposes of forming the opinions set forth in the expert's report but only if the expert actually relies upon in forming his or her opinion.

(b) Documents considered by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) shall be produced within ten days after producing the witness' report. Such documents shall be produced in accordance with the requirements of Section VII of this order, except that the Parties shall identify which witness(es) considered each document either in the load file produced along with the documents or in the witness' report. However, the Parties do not need to produce: (1) copies of documents that were previously produced in this matter,

provided that the Party identifies the documents by Bates number before the expiration of the 10-day period described in this subparagraph; (2) copies of documents considered by experts that are publicly available (e.g., published materials one might find in a library), unless it would be less burdensome for the producing Party to obtain a copy than it would be for the receiving Party, and the receiving Party requests a copy after receiving the expert report. All such requests shall be fulfilled within 10 days.

(c) Notwithstanding the provision of Fed. R. Civ. P. 26(a)(2)(B)(iii), the experts' disclosures under Rule 26(a)(2) need not include demonstrative exhibits the expert may use at trial, provided that the facts and data supporting such trial demonstrative exhibits have been disclosed in the experts' report or in the documents considered by that witness. Each Party agrees to provide the other Parties with copies of any demonstrative exhibits before they are used at trial. The Parties will seek to reach agreement on how long before trial demonstrative exhibits must be exchanged. If the Parties are unable to reach agreement, one or more Parties may ask the Court to set a deadline for exchanging copies of demonstrative exhibits.

## IX. ELECTRONIC SERVICE AND SIGNATURE

49. Nothing in this Order supersedes local rules or ECF procedures with respect to service of papers via ECF.

50. Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the Parties consent to service by electronic mail for papers within the scope of Rule 5(d)(1)(A) that need not be filed with Court. Service by electronic mail must be made upon:

For Plaintiff(s):

For the United States:

- Samantha M. Ricci, Samantha.ricci@usdoj.gov
- Sasha M. Alvarenga, sasha.alvarenga@usdoj.gov

For the state of Indiana, all counsel of record, which is currently:

- Meredith McCutcheon, Meredith.mccutcheon@atg.in.gov

- E. Marie Queen, ellen.queen@atg.in.gov

For Defendant(s): For City Defendants, all counsel of record, which is currently:

- Stephanie L. Gutwein, stephanie.gutwein@faegredrinker.com
- H. Max Kelln, h.max.kelln@faegredrinker.com
- Natalie Wichern Ditzler, natalie.ditzler@faegredrinker.com

For Safety-Kleen:

- Allen A. Kacenjar, allen.kacenjar@squirepb.com
- Erik D. Lange, erik.lange@squirepb.com
- John Lazzaretti, john.lazzaretti@squirepb.com

51. The Parties may change the email distribution list for service of papers by written notice, including emailed notice, to the other Parties. Inadvertently omitting one or more email addresses from an email used to serve a paper does not render service ineffective, provided that service was made on at least one counsel of record for that Party, as reflected in the Court's ECF service list.

52. Service by electronic mail is complete upon transmission. Papers that must be served on a particular day must be transmitted by 11:59:59 pm in the time zone applicable to the Clerk of Court's principal office.

53. If, after transmitting a paper, the transmitting Party learns that delivery failed, it shall re-transmit the paper as soon as practicable, and the date on which the paper was served will relate back to the time of the original transmission. Nothing in this paragraph prejudices a Party from seeking an appropriate extension of deadlines, including one triggered by receipt of a paper served in accordance with this Order.

54. Nothing in this Order requires a Party to serve a paper by electronic mail, provided that service otherwise complies with the Federal Rules of Civil Procedure. Nothing in this Order changes the requirements with respect to certificates of service.

55. The Parties shall use one or more of following means of applying a signature to disclosures and discovery requests, responses, and objections that require one or more signatures pursuant to Fed. R. Civ. P. 26(g)(1), 33(b)(5), or 36(a)(3):

(a) Applying a wet ink signature to paper, in which case any scanned copy or photocopy will be considered a duplicate original;

(b) Applying an electronic signature that contains a digital certificate; or

(c) Any other means permitted by the local rule or order of this Court.

## X. MISCELLANEOUS PROVISIONS.

56. In the event that a non-party produces documents or ESI in response to a subpoena, the Party serving the subpoena shall make reasonable provision for prompt access to the produced materials by other Parties.

57. Before filing a Joint Motion for Discovery Ruling or Motion for Discovery Ruling with the Court regarding electronic discovery or evidence, the Parties shall meet and confer in a good faith attempt to resolve such disputes.

58. Effect of Order. The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

59. Integration/Appendices. The following documents are incorporated herein by reference:

(a) "Appendix A" is a table describing the fields to be included in the databases produced by each Party.

SO ORDERED this 14th day of October 2026.

/s/ Abizer Zanzi
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT

ADAM RF. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

*/s/ Samantha M. Ricci*
Samantha M. Ricci
(Cal. Bar. #324517)
Sasha M. Alvarenga
Trial Attorneys
Environmental Enforcement Section
Energy and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
(202) 532-3950
Samantha.ricci@usdoj.gov

*Local Counsel*
Tina L. Nommay
Acting United States Attorney
Northern District of Indiana

Wayne T. Ault
Assistant United States Attorney
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

SQUIRE PATTON BOGGS (US) LLP

*/s/ John D. Lazzaretti*
Allen A. Kacenjar (admitted *pro hac vice*)
Erik D. Lange
John D. Lazzaretti
Squire Patton Boggs (US) LLP
1000 Key Tower
127 Public Square
Cleveland, OH 44114
216.479.8296 (Kacenjar)
216.479.8040 (Lange)
216.479.8350 (Lazzaretti)
allen.kacenjar@squirepb.com
erik.lange@squirepb.com
john.lazzaretti@squiprepb.com

*Counsel for Safety-Kleen Systems, Inc.*

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Stephanie L. Gutwein*
Stephanie L. Gutwein (#31234-49)
H. Max Kelln (#30358-49)
Natalie Wichern Ditzler (#38380-49)
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: 317-237-0300

*Counsel for the United States*

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

/s/ Meredith McCutcheon
E. Marie Queen, Attorney No. 32726-49
Meredith McCutcheon, Attorney No.32391-49

OFFICE OF ATTORNEY GENERAL
TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
E-mail: Ellen.Queen@atg.in.gov
E-mail: Meredith.McCutcheon@atg.in.gov

*Counsel for the State of Indiana*

Fax: 317-237-1000
stephanie.gutwein@faegredrinker.com
h.max.kelln@faegredrinker.com
natalie.ditzler@faegredrinker.com

*Attorneys for defendants East Chicago Sanitary District and the City of East Chicago*

# Appendix A:
# Fields to Exchange in Databases of Discovery Materials

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | **E-mail** | **Word Processing or PDFs** | **Spreadsheets** | **Digital Photos** | **Paper** |
| Bates Beg | Text | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page, or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto a TIFF file that has the same resolution as the native image file. | Bates number for the TIFF image of the first page |
| Bates End | Text | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto the native image file | Bates number for the TIFF image of the last page |
| Bates Beg Attach | Text | Bates number of the first page of the document family. Will be blank if there are no attachments | Bates number of the first page of the document family. Will be blank if there are no attachments | Bates number of the first page of the document family. Will be blank if there are no attachments | Bates number of the first page of the document family. Will be blank if there are no attachments | Bates number of the first page of the document family. Will be blank if there are no attachments |
| Bates End Attach | Text | Bates number of the last page of the document family. Will be blank if there are not attachments | Bates number of the last page of the document family. Will be blank if there are not attachments | Bates number of the last page of the document family. Will be blank if there are not attachments | Bates number of the last page of the document family. Will be blank if there are not attachments | Bates number of the last page of the document family. Will be blank if there are not attachments |
| All Custodians | Text | | The names of all persons who had primary control over the location from which a document was collected. | The names of all persons who had primary control over the location from which a document was collected. | The names of all persons who had primary control over the location from which a document was collected. | The names of all persons maintain the file from which the paper was actually obtained. |
| Sender Combined | Text | "From" field | <blank> | <blank> | <blank> | <blank> |
| Addressee Combined | Text | "To" field | <blank> | <blank> | <blank> | <blank> |

| **Name of Field** | **Type of field** | **Contents** | | | | |
|---|---|---|---|---|---|---|
| | | **E-mail** | **Word Processing or PDFs** | **Spreadsheets** | **Digital Photos** | **Paper** |
| CC Combined | Text | "CC" field | <blank> | <blank> | <blank> | <blank> |
| BCC Combined | Text | "BCC" field | <blank> | <blank> | <blank> | <blank> |
| Email Subject | Text | "Subject" field | <blank> | <blank> | <blank> | <blank> |
| Email Sent Date | Date | The date and time the message was sent | <blank> | <blank> | <blank> | <blank> |
| Message ID | Text | For e-mails in Microsoft Outlook, the "Message ID" field; For e-mail stored in Lotus Notes, the UNID field | <blank> | <blank> | <blank> | <blank> |
| MD5 Hash | Text | The MD5 hash value calculated based on addresses, subject line, body, and attachment names. | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | <blank> |
| File Name | Text | <blank> | The name of the file | The name of the file | The name of the file | <blank> |
| All Paths | Text | <blank> | The name of the folder from which the file was obtained, including any parent folders that also contained responsive material. | The name of the folder from which the file was obtained, including any parent folders that also contained responsive material. | The name of the folder from which the file was obtained, including any parent folders that also contained responsive material. | The title of the folder in which the document was kept. |
| Confidentiality Level | Text | Level of confidentiality assigned. May be populated with any of the following in accordance with the terms of a protective order:<br><br>Confidential<br>Highly Confidential<br>Attorneys' Eyes Only | | | | |
| File_Path | Text | <blank> | The path to the native file on the production media (if it is being provided) | The path to the native file on the production media | <blank> | <blank> |

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | **E-mail** | **Word Processing or PDFs** | **Spreadsheets** | **Digital Photos** | **Paper** |
| Extracted or OCR Text | Text | Text extracted from the message body | Text extracted from the file. However, if the file does not contain text or if redactions were made, then OCR text shall be provided. | Text extracted from the file or if redactions were made, then OCR text shall be provided. | <blank> | OCR Text |